Josh D. Gruenberg, Esq., SB #163281
josh@gruenberglaw.com
Jason D. Goldwater, Esq., SB # 288877
goldwaterj@gruenberglaw.com
Julia A. Aguilar, Esq. SB #356771
aguilarj@gruenberglaw.com
GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-2013
TELEPHONE: (619) 230-1234
TELECOPIER: (619) 230-1074

Attorneys for Plaintiff,
**JASMINE MATTOON**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE MATTOON, an individual,<br><br>PLAINTIFF,<br><br>v.<br><br>INTUIT INC., a Delaware corporation; and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000e,** *et seq*.<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, PLAINTIFF JASMINE MATTOON ("PLAINTIFF" or "Ms. MATTOON"), by and through her counsel of record, Gruenberg Law, and upon information and belief and demanding a trial by jury, for her Complaint against Defendant INTUIT INC., ("INTUIT" or "Defendant") and states as follows:

### I.   PRELIMINARY STATEMENT

1.   PLAINTIFF brings this lawsuit alleging as against Defendants violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.

///

///

///

2. Pursuant to Title VII, it shall be an unlawful employment practice for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

3. Title VII was enacted, *inter alia*, for the purpose of ensuring that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

4. PLAINTIFF alleges that Defendant has systematically acted with the purpose and effect of denying to PLAINTIFF the same environment, terms, and conditions of employment as others similarly situated because of her race.

## II.   PARTIES

5. PLAINTIFF, JASMINE MATTOON ("PLAINTIFF" or "Ms. MATTOON") is, and at all times herein mentioned was, a resident of the County of Tarrant in the State of Texas.

6. Defendant, INTUIT INC., ("Defendant" or "INTUIT") is a business and financial software company that provides financial, accounting, and tax preparation software and related services for small businesses, accountants, and individuals.

7. INTUIT is an "employer" within the meaning of the statutes under which PLAINTIFF brings her claims.

## III.   JURISDICTION & VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f).

9. Venue is proper in the Northern District of California because a civil action may be brought in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(3).

///

///

10. Pursuant to 28 U.S.C. section 1332(c)(1), a corporation is a citizen of any state in which it is incorporated, in addition to the state where it maintains its principal place of business. The United States Supreme Court has specifically recognized a corporation's "principal place of business" is its "nerve center" or the state where high level officers direct, control, and coordinate the corporation's activities. (*Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).) In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. (*Id.*)

11. Here, Defendant INTUIT is a corporation duly created and organized under the laws of the State of Delaware, with its principal place of business located at 2700 Coast Avenue, Mountain View, California 94043, where the corporate officers direct, control, and coordinate the corporation's activities.

12. PLAINTIFF is entitled to file this civil action because less than 90 days have elapsed since receiving a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission (EEOC) on December 23, 2025, in conformance with 42 U.S.C. § 2000e-16(c) and 2000e-5. *See* 29 C.F.R. §1914.407. A copy of the Notice of Right to Sue is attached hereto as "Exhibit A."

### IV. SUMMARY OF THE FACTS

13. In or around February 2022 Defendant INTUIT hired Ms. MATTOON as a Tax Prep Assistant. In this seasonal, remote position, Ms. MATTOON assisted clients and tax professionals in preparing accurate and timely tax filings.

14. In or around February 2024, Defendant INTUIT promoted Ms. MATTOON to Tax Specialist (Tax Associate) after she completed the prerequisites for the position and passed the "Intuit Academy" tests. Like her previous role, this was a seasonal and remote position.

15. Her job duties included preparing individual income tax returns for Level 1 and Level 2 clients, including clients with: Earned Income Tax Credit

(EITC); multiple dependents and head-of-household filings; multiple W-2s or job transitions; mortgage interest and real estate deductions; single-member LLCs and sole proprietorships; basic to moderately complex small business income; and clients with investment income, including capital gains, dividends, and brokerage activity. Ms. MATTOON was paid an hourly rate of $24.00 an hour.

16. Additionally, her role required providing a high-quality client experience. In fact, customer satisfaction ratings heavily influenced Ms. MATTOON's metrics and chances of returning for the following tax season. The metrics are based on client feedback, quality assurance reviews, efficiency, and compliance standards. For the last three years, Defendant INTUIT re-hired Ms. MATTOON due to her past performance.

17. At all times relevant herein, Plaintiff performed her work in a competent and diligent manner.

## Zoellick's Discriminatory Behavior

18. In or around February 2024, shortly after being promoted to Tax Specialist, Ms. MATTOON was assigned to Todd Zoellick's team. Todd Zoellick ("Zoellick") was a Level 1 Manager.

19. In or around March 2024, during a video meeting, Ms. MATTOON mentioned to Zoellick that she was relocating to Dallas, Texas. To which Zoellick shockingly responded, "Dallas is a bit rough. I moved from Illinois because there were too many black people, and it had gotten too rough for my taste," or words to that effect. Ms. MATTOON was taken aback by his comment. Ms. MATTOON is black, and Zoellick's comment made her feel small, devalued, and unwelcomed in the professional setting. Ms. MATTOON hoped that his comment was an isolated remark, but Zoellick continued making similar comments in the following tax season.

20. In December 2024, Ms. MATTOON returned for the upcoming tax season and was once again assigned to Zoellick's team. In or around January 2025, Zoellick made another race-based remark towards Ms. MATTOON. During a

conversation about workplace culture, Ms. MATTOON expressed her worries about how the current political climate could impact the working conditions at Intuit. In response, Zoellick stated, "Intuit is a bigger company, and we would not let you go for being a DEI hire. But if you worked for a smaller company like Chase Bank, you definitely would be let go," or words to that effect. Ms. MATTOON was stunned that Zoellick called her a "DEI hire," which implied that her position on the team was due to diversity hiring practices rather than her qualifications or merit. She found his comment particularly upsetting, given that she had met all the necessary requirements and passed the requisite tests to be promoted to Tax Specialist.

21. In or around early February 2025, Ms. MATTOON shared her career aspirations of being a Certified Public Accountant ("CPA") with Zoellick. Zoellick replied, "CPA would be harder for a woman. Maybe you should try the Enrolled Agent exam first because the program was less difficult," or words to that effect. Again, Ms. MATTOON felt as if Zoellick was dismissing her capabilities because she is a black woman.

22. During Zoellick and Ms. MATTOON's one-on-one meetings, Ms. MATTOON raised concerns about her low Back Office Prep ("BOP") metrics, which negatively impacted her CES ranking. In prior seasons, Ms. MATTOON had high BOP and CES scores. Therefore, the news that she allegedly had low BOP scores was concerning. A low BOP score indicates that the employee is not working during certain periods of time. CES scores measure how an employee ranks in comparison to their peers, and play a critical role in determining eligibility for bonuses and whether an employee will be selected for an extension of employment beyond the regular tax season. Employees who are extended may be assigned to assist clients during the off-season, contribute to special projects, and receive additional training. However, even if extended, these individuals remain seasonal employees, are off boarded at the end of the cycle, and would have to be rehired in December.

///

23. During their one-on-one meetings, Ms. MATTOON repeatedly expressed to Zoellick her belief that her low BOP scores were the result of technical or software issues, considering the substantial time she dedicated to preparing tax returns. However, Zoellick dismissed the possibility of any system-related errors and maintained that the issue was user-related. Despite this, Ms. MATTOON repeatedly urged him to investigate the matter. Ultimately, Ms. MATTOON was not offered an extension, and she believes that her low BOP scores – and the resulting impact on her CES ranking – contributed to that decision.

24. Zoellick then called a meeting to address the BOP issue and acknowledged that other team members had also been receiving low BOP scores. This was the first time he conceded that there may have been a system-wide glitch, validating Ms. MATTOON's prior concerns. During this meeting, Zoellick assured Ms. MATTOON that since the low BOP scores were due to a system error, her CES score would not be negatively impacted. However, Ms. MATTOON remained unconvinced, based on her observations and experience from prior seasons, and pushed back. She reminded Zoellick that the damage had already been done – her seasonal position had not been extended, which she believed was a direct result of her low BOP and CES scores. In response, Zoellick claimed that BOP metrics were not a factor in calculating CES scores.

25. Frustrated by Zoellick's dismissive attitude, Ms. MATTOON told him that she suspected that she had not been extended for reasons that were illegitimate. In response, Zoellick said, "Why might that be? And don't you dare play *that*[1] card." Ms. MATTOON replied, "Funny that '*that card*' is even on your mind." Zoellick then tried to backtrack, "I am not racist. I look at all people for their abilities and nothing more. I don't understand why *you people* go to that resolution," or words to that effect. Taken aback, Ms. MATTOON asked, "'You people?'" Zoellick then said,

---

[1] Ms. MATTOON believes that Zoellick was referring to the race card when he said, "*that* card."

"I didn't mean '*you people*.' I am just saying people that think that way," or words to that effect.

### Ms. MATTOON Reports Zoellick's Discriminatory Behavior

26.     In or around late March 2025, Ms. MATTOON reported Zoellick's comments towards her to Human Resources and requested to be reassigned to a different supervisor. She spoke with Human Resources Connect Channel Advisor, Tyler Jefferson ("Jefferson"), who suggested that Zoellick's supervisor, Jaime Karakchos, should be contacted. Fearing retaliation, Ms. MATTOON commented, "I am afraid if I push this further, I'll be retaliated against and won't be invited back," or words to that effect. Jefferson assured her that would not happen. Ms. MATTOON then agreed for her complaint to be escalated to Level 2 Manager, Jaime Karakchos ("Karakchos").

27.     On or about March 31, 2025, Jefferson followed up with Ms. MATTOON to report that Karakchos would be contacting her.

### Zoellick Retaliates Against Ms. MATTOON

28.     On or about April 18, 2025, Ms. MATTOON had her final one-on-one meeting with Zoellick to discuss her potential return for the following tax season. Also present was Sarah, a fellow manager. Ms. MATTOON was shocked to discover that not only had Zoellick brought a witness – something he had never done before – but that the meeting was also being recorded. When she inquired about the recording, Zoellick snarled, "Because you apparently have an HR complaint against me," or words to that effect.

29.     During the meeting, Zoellick claimed that senior leadership had decided not to invite her back for the next season and any upcoming seasons, citing an alleged failure to uphold "Intuit's values." Ms. MATTOON was surprised by this vague accusation and asked for clarification regarding which values she had allegedly violated. Zoellick responded ambiguously, saying, "If you look at those values, you could probably see areas in every one of them that you are not meeting. You can

certainly review those values," or words to that effect. Zoellick then went on to say that Ms. MATTOON made negative comments about her coworkers, alleging that she had called her teammates' work "inferior" and that her work was "superior" to theirs. Ms. MATTOON vehemently denied these claims in the meeting and asserted that Zoellick was retaliating against her for reporting him to Human Resources. She further questioned the credibility of the allegations and reminded Zoellick that just a month earlier, he had awarded her a "Stronger Together Spotlight[2]." The meeting concluded with Ms. MATTOON requesting to speak with Karakchos, as she had yet to hear from her.

30. On or about April 19, 2025, at 2:26 PM, Ms. MATTOON contacted Senior Manager Paul Barone ("Barone") via Slack to report Zoellick's unlawful retaliation. She also reported that Zoellick had made racially insensitive comments and bullied her in the workplace. Barone acknowledged her message and referred her to Karakchos.

31. Later that day, at approximately 2:35 PM, Zoellick provided Ms. MATTOON with her End of Season summary. Her final Season Rating was "Achieved Expectations," and she received a Full-Service Pro Satisfaction rating of 98%.

32. At approximately 2:58 PM on April 19, 2025, Ms. MATTOON emailed HR Connect that, despite her prior attempts at outreach, she still had not received any word from Karakchos. She further expressed that her fears of retaliation had come to fruition and alleged that Zoellick had fabricated allegations that she did not uphold the company's core values to undermine her credibility.

33. On or about April 21, 2025, at 11:56 AM, Jefferson informed Ms. MATTOON that her complaint had been forwarded to the Ethics and Investigations team. He further advised that someone from the team would be

---

[2] A "Spotlight" is a type of recognition at Intuit. Specifically, Ms. MATTOON received the "Stronger Together Spotlight" on March 18, 2025. The Spotlight congratulated Ms. MATTOON for "going above and beyond to help others on [her] team," and that "[her] colleagues have recognized this through the 360 Degree Feedback process." ZOELLICK even wrote, "I am very pleased that you are so supportive of your teammates."

contacting her in the coming days.

34. Ms. MATTOON's last official day was April 26, 2025. Despite promises, Karakchos never communicated with her.

35. Throughout her employment with Defendant, Ms. MATTOON never received any disciplinary action and was never placed on any performance improvement plans.

36. On information and belief, other white team members with lower performance ratings than Ms. MATTOON's were invited to return for the following tax season.

37. As a result of Defendants' unlawful retaliation and discriminatory conduct, Ms. MATTOON has suffered emotional distress, anxiety, depression, sleeplessness, stress, worry, and humiliation.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM

### DISCRIMINATION BASED ON RACE

**[42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e-16(a)]**

### v. Defendant INTUIT

38. PLAINTIFF re-alleges and incorporates by reference the allegations, as more fully set forth in Paragraphs One (1) through Thirty-Seven (37) of this Complaint, as if set forth at length herein.

39. PLAINTIFF believes and thereon alleges that she was intentionally discriminated against based on her race. Such actions are unlawful pursuant to 42 United States Code §2000e-2(a), and have resulted in damage and injury to PLAINTIFF, as alleged herein.

40. Defendant subjected PLAINTIFF to adverse employment actions, as described herein, based on her race.

41. Alternatively, PLAINTIFF's race was a motivating factor in the Defendant's decision to subject PLAINTIFF to adverse employment actions, as

described herein.

42. As a proximate result of Defendant's discrimination of PLAINTIFF, PLAINTIFF has suffered and continues to suffer humiliation, emotional distress, and loss of reputation, all to her damage in a sum to be established according to proof.

43. As a proximate result of Defendant's willful, knowing, and intentional discrimination of PLAINTIFF, PLAINTIFF has sustained and continues to sustain substantial losses in earnings, bonuses, and other employment benefits and opportunities.

44. As a proximate result of Defendant's deliberate, outrageous, and despicable conduct, plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with each of Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

45. PLAINTIFF has incurred and continues to incur legal expenses, costs, and attorneys' fees. PLAINTIFF is entitled to an award of attorneys' fees and costs upon being named the prevailing party in this case.

46. Plaintiff has fully exhausted her administrative remedies in conformance with 42 U.S.C. §2000e-16(c) and 2000e-5.

## SECOND CLAIM
## RETALIATION
## [42 U.S.C. §2000e-3(a); 42 U.S.C. §2000e-16(a) and (b)]
## v. Defendant INTUIT

47. PLAINTIFF re-alleges and incorporates by reference the allegations, as more fully set forth in Paragraphs One (1) through Thirty-Seven (37) of this Complaint, as if set forth at length herein.

48. PLAINTIFF was at all times material hereto an employee covered by Title VII of the Civil Rights Act of 1964, which prohibits retaliation in employment on the basis of complaints made against unlawful discriminatory, harassing, or retaliatory treatment.

49. Defendant INTUIT was and is at all times material hereto an employer within the meaning of Title VII, and as such, is barred from retaliating in employment decisions for complaints made by an employment about discrimination, harassment, or retaliation as set forth in Title VII.

50. PLAINTIFF and Defendant INTUIT maintained an employer-employee relationship at all times relevant herein.

51. PLAINTIFF participated in an activity that is protected under federal law, that is by complaining about discrimination or harassment based on her race.

52. As alleged herein, Defendant subjected PLAINTIFF to an adverse employment action.

53. PLAINTIFF was subjected to the adverse employment action because of her protective activity.

54. As a proximate result of Defendant INTUIT's conduct, PLAINTIFF has suffered and continues to suffer humiliation, emotional distress, and loss of reputation, all to her damage in a sum to be established according to proof.

55. As a proximate result of Defendant INTUIT's conduct, PLAINTIFF has sustained and continues to sustain substantial losses in earnings, bonuses, and other employment benefits and opportunities.

56. As a proximate result of Defendant INTUIT's deliberate, outrageous, and despicable conduct, plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with each of Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

57. PLAINTIFF has incurred and continues to incur legal expenses, costs, and attorneys' fees. PLAINTIFF is entitled to an award of attorneys' fees and costs upon being named the prevailing party in this case.

58. Plaintiff has fully exhausted her administrative remedies in conformance with 42 U.S.C. §2000e-16(c) and 2000e-5.

///

# VI. PRAYER FOR RELIEF

59. **WHEREFORE**, PLAINTIFF prays for Judgment in her favor, and against Defendant INTUIT INC. as follows:

    A. For compensatory damages, including loss of wages, promotional opportunities, benefits, and other opportunities of employment, according to proof;

    B. For special damages in an amount according to proof;

    C. For general damages, including but not limited to emotional distress damages;

    D. For back pay, front pay, and other monetary relief;

    E. For punitive damages against Defendant in an amount necessary to make an example of, and to push, Defendant, and to deter future similar misconduct;

    F. For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

    G. Reasonable Attorneys' Fees;

    H. Costs of suit; and

    I. For such other and further relief as may be just and proper.

**PLAINTIFF JASMINE MATTOON** demands a jury trial on all issues in this case.

DATED: February 9, 2026    **GRUENBERG LAW**

　　　　　　　　　　　　　　　　　 /s/ Julia Aguilar
　　　　　　　　　　　　　　　JOSH D. GRUENBERG
　　　　　　　　　　　　　　　JASON D. GOLDWATER
　　　　　　　　　　　　　　　JULIA A. AGUILAR
　　　　　　　　　　　　　　　Attorneys for PLAINTIFF,
　　　　　　　　　　　　　　　**JASMINE MATTOON**

# Exhibit A

(1) Notice of Right to Sue

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Dallas District Office
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website:  www.eeoc.gov

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/23/2025

**To:** Ms. Jasmine Mattoon
4316 Wexford Drive
Fort Worth, TX 76244
Charge No: 450-2026-02738

| EEOC Representative and email: | QUIDA BLACK |
| | INVESTIGATOR SUPPORT ASSISTANT |
| | QUIDA.BLACK@EEOC.GOV |

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2026-02738.

On behalf of the Commission,

For: Travis Nicholson
District Director

**Cc:**
Incident Location
Intuit, Inc.
4316 Wexford Drive
Fort Worth, TX 76244

Julia A Aguilar Esq.
Gruenberg Law
2155 First Avenue
San Diego, CA 92101


Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 450-2026-02738 to the District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 450-2026-02738 to the District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.